243074. Counsel for appellant, if you would make your appearance and proceed, please. Your Honors, if it pleases the Court, the appellant, Teresa Hight, appears by her attorney Tom Haney with Stephenson Brand, LLP. I was also Ms. Hight's attorney at trial in this matter. And welcome to Topeka and welcome to Washburn's beautiful new law school. I'd like to reserve three minutes if I can, at least that's my goal. Your Honors, in this case, Teresa Hight did not receive a fair trial. She was prevented from such by rulings of the trial court. What I want to argue today is the defense moved for a two-day continuance after presenting the first of its only two witnesses. The defense's second and chief witness had the potential to have changed the verdict that was reached in this case. The defense was not allowed to call that witness. The second issue I want to argue is the trial court's erroneous order that the defense could not adequately cross-examine the government's chief law enforcement witness, Detective Landry of the Shawnee County Sheriff's Department, to show the jury that he had testified falsely before the grand jury and potentially had a bias and a self-interest in this matter. Your Honors, because of these and other errors, which we briefed but will not argue specifically this morning, Mrs. Hight did not receive a fair trial. Mr. Haney, I just want to get your position on a threshold issue, and that relates to preservation. The government alleged that a number of the arguments that you made in this case that you did not preserve them by virtue of your actions below in the district court, and in your reply brief, at least as I read it, you didn't address that allegation of lack of preservation. So I wonder what's your position about that? Your Honor, I think the court's referring to an argument in our brief concerning an instruction regarding whether the government intentionally destroyed evidence or did not. Well, I mean, there were actually several. I mean, the government said you didn't preserve the Deputy Landry contention. The government said you didn't preserve the limiting instruction regarding the poll camera. So there were actually several allegations of lack of preservation, and I'm just wondering, in light of the failure to respond to them in the reply brief, what your position is on whether you, in fact, preserved that. Your Honor, I think with respect to Detective Landry, I think we did preserve that, and I think I'll continue to argue that this morning. Regarding the poll camera, all I can tell the court is that we did state in our brief we made that the subject of a Rule 29 motion. It was discussed with the court, and instruction was mentioned, but the government is correct that a specific request for instruction on intentional or negligent destruction of evidence was not made. So we're here today possibly on plain error on that issue, but I think the other issues were, in fact, discussed. Well, if you didn't argue plain error in your brief, then you're not here before us on plain error in the argument in your brief. I understand, Your Honor. I think the Tenth Circuit has the power to rule on that. We have the power. You have the power. Whether you will or not, that's your decision. All right, go ahead, Mr. Haney, please. Thank you. The indictment was originally brought on September 15th of 2021 against four defendants, resulting from an incident which occurred on January 13th of 2021. The government alleged that a drug runner delivered a car loaded with methamphetamine and offloaded it in a garage rented by Mrs. Height and her common-law husband, Scott Carson. Four people were indicted. Shelly Zarazua was a multi-kilo purchaser and dealer of methamphetamine in Kansas with ties to a Mexican drug cartel. She was the ringleader of her gang. Her cousin, Alan Baker, was a distributor for Zarazua. A third defendant, Annabelle Madrigal, was a drug mule who delivered meth for the cartel for various points in the United States. Height and her husband rented a house which had an attached garage on the property where the meth was offloaded. Based on a tip to law enforcement of the potential delivery of drugs to Topeka, the garage was under surveillance the day of the arrests. It was also subject to a poll camera which had been installed by law enforcement. Counsel, with respect to your motion for the continuance, which witness is the focus of that motion as you're arguing it on appeal? Because there were two, right? Ms. Morrow and Ms. Allison. Is that right? Yes. So who would you like us to focus on? Stephanie Allison. Okay. Thank you. And that's the witness you subpoenaed? That's the witness the court allowed us to subpoena and we did subpoena. Did you provide an offer of proof to the court with respect to this witness' testimony? We did, Your Honor. In those days the rules were a little different. We had an ex parte hearing in which the court had to make a finding, a materiality. The court made that finding. The court issued the authority to issue a warrant or issue a subpoena. We issued a subpoena and the witness failed to appear on the first day of trial. The court issued a bench warrant. So are you contending that the offer of proof that is necessary here to get through the factors, to see whether the continuance was warranted, we should look to the factual basis for the subpoena for that? Your Honor, I think the materiality of the subpoena speaks for itself. The court would not have allowed us to issue a subpoena if it wasn't for a witness who was material. But is that the same standard, Mr. Haney? I mean, offer of proof relates to what, in fact, the witness would testify to and why you needed the witness. I mean, explain to me what case supports the notion that that is the same standard as materiality for a subpoena. I mean, I'll stop there. That's the question. Your Honor, we had explained to the court, both ex parte and at trial, why this witness was material. And I think overwhelmingly there was no question. She was going to come to court, pursuant to her statements to the defense and pursuant to what she had advised the defense voluntarily, that the government's key witness in this case, which I'll get to, Shelly Zarazua, had lied and admitted to this witness. I lied about my friend Teresa Height, got her in trouble. I'm sorry, but I'm locked into my story and I've got to tell it in court. I'm going to stop you because I think you're talking about the letter from Jeanette Morrow, which is in the record. And so that's why this whole thing seems a little confusing to me. You're quoting from the letter to you. It's a handwritten letter. It's in the record to Mr. Thomas Haney. But that's from Jeanette Morrow. That's the other witness that you wanted to continue for, correct? There are actually two letters, Your Honor. Only one's in the record. Well, we proffered to the government exactly what our witness, who had been subpoenaed, was going to say. And she was going to say that she was in jail with Shelly Zarazua. Shelly Zarazua told her, gosh, I've lied about my friend Teresa Height, got her in trouble, but I'm going to have to say what I told the government or I'll get in trouble. The other witness, and I'm not arguing, even though the court made the comment, that both witnesses had been subject to due diligence by the defense. The court commented that's not an issue for either witness. And both witnesses essentially were saying the same thing that Shelly Zarazua had told them personally, these matters. But we didn't find the second witness. We tried to find her. She was not subpoenaed. So the government's correct in that that if she would have shown up, we could have used her. And if we had no argument with the court that we had not subpoenaed her and we had not had a bench warrant issued for her, there's nothing more the defense could have done. So is it a correct understanding of your argument that now, by the time of the appeal, the only witness that's at issue for the motion to continue is Allison? Yes. And to further clarify, the line of questioning that you were engaging in with Judge Rossman, the notion of the offer of proof, was there any connection made between the ex parte comments regarding the subpoena and the need for her testimony in a continuance? In other words, as I understand you, you're suggesting that the court should have drawn the line between the two. Did you expressly tell the court to draw the line between the two? Because, I mean, if we're going to look at that other statement that you made in connection with the ex parte request for a subpoena, and I assume that's in the record, if we're going to do that, then we need to be able to know that the district court understood that it should be drawing that connection, shouldn't we? No, Your Honor. I don't think that distinction had any bearing on the court's ruling in this case. The court knew we had at least one witness who had been subpoenaed. The bench warrant was issued for that witness, and that witness was material. And on a Friday afternoon, the court refused to grant a continuance for two days over the weekend to procure that subpoenaed witness. I can't tell the court, and I couldn't tell the court at trial, that we could find her, but with the help of the marshals and the help of our investigator, we should have had the two days to find this witness. So are you saying that it's enough that she was material enough to issue a subpoena, that the court therefore should have understood that to be sufficient for purposes of getting the continuance? Yes. I think when we look at the timing on this, there was no inconvenience to the court or the jury by continuing this case for two days over a weekend. Well, counsel, the district court said that it was inconvenient, that it would be inconvenient. I understand your position is that that was incorrect. But my question to you is, let's assume that all of the McLaughlin factors here we resolve in your favor, except for inconvenience. Doesn't the district court have a tremendous amount of discretion over the management of its docket, particularly during trials? Without question. The court cannot abuse that discretion, and our position is the court did abuse that discretion, because I cannot logically, it's not a legal question, we cannot logically figure how the court could be inconvenienced by continuing a case for two days over a weekend to allow the defense to find its central key witness. We didn't ask for a three-week continuance. We didn't ask the jury to go home and come back later. We just wanted to say don't make us close the case on Friday when we had a witness we wanted to find and had two days to find it. There was no delay of the court proceedings. There was no delay to the jury. There was no delay to the court. There simply was no possible inconvenience. Well, there was a delay in the sense, wasn't there a delay in the sense that the court was ready to send this to the jury? If you didn't have anything else to present, it would have went to the jury on Friday afternoon, as opposed to letting the jury go sometime Friday afternoon, having them all come back on Monday in hopes that you find this witness. The jury came back on Monday anyway. Okay. So in practicality, no, there was no inconvenience. Was that for deliberations? And if there was, it was so slight as to be de minimis, Your Honor. The second issue which I wanted to bring the court's attention to, which I know the court has reviewed, was the decision by the court not to allow us to adequately cross-examine the government's key law enforcement witness. Counsel, what is your understanding of the district court's reason for not allowing that cross-examination? What was the ultimate ruling that is before us on that issue? My understanding, the court ruled that although we claimed this witness committed perjury during a grand jury session by claiming facts which were not true, the court felt that even discussing that issue in front of a jury, the jury would be confused because it was a different proceeding, it was a grand jury proceeding, there were different burdens of proof, and the court was simply not going to allow us to examine this witness. And so is it your understanding then that the ruling was not one about admissibility per se, right? It was about prejudice under Rule 403. Is that a fair characterization of the district court's ruling? That's fair, as I understood what the court was saying. The court said essentially the jury could be confused. To this day, in argument of the court, I don't know how the jury could be confused. Perjury is perjury, whether it's before a grand jury or before a trial court. And that was this defendant's position during trial, that this witness perjured himself, and we were entitled to explore that before the jury, either through cross-examination and directly calling him as a witness, and we were not allowed to do so. Your Honor, the statement itself appears on page 24 of our brief. My client was indicted, lost her freedom, because this witness said an interview was post-Miranda. We presented her with a Miranda waiver as well as agreed to speak. Hite said she was contacted by Zarazua to use her garage to essentially do what they were doing, require vehicles inside the garage, unload them with narcotics, let them go. Hite said that she was receiving a payment for the, I guess, for her lending this garage for this activity, and specific payment was an ounce of meth. That was it. And we submitted, Your Honors, that statement was false. Thank you. Thank you, counsel. Good morning, Your Honors. My name is James Brown. I'm the Assistant United States Attorney here in the District of Kansas, and I work in the Topeka office. Welcome to Topeka and Washburn University, and may it please the Court. Your Honors, I'd like to talk about, give an overview of the case and the preservation issues in this case before I talk about the issues one and three, which my colleague spoke about earlier this morning, because I think the preservation issues basically foreclosed many of his claims. The defendant has four issues, and among those four issues are five discreet claims, but he's only preserved two of the five claims. As to issue one, he did preserve the claim that the district court abused its discretion by not granting his request for a continuance to look for a witness. Under issue two, he did preserve his claim that the sentence was too long, but he did not preserve the claim that the district court inadequately explained its reasons for the sentence with respect to the three, five, five, three, eight factors. So the procedural component of that sentence, that's weighed, and the reason for that is he didn't argue for plenary review on appeal for that. Under issue three, which is what my colleague has focused on, whether or not the district court abused its discretion in denying his request to call Detective Landry, he's weighed that issue in two ways. The first way is the district court ruled that the testimony should not be admitted because it would cause confusion to the jury, and that's a sufficient and cognizable ground to exclude the evidence under Rule 403. But the court didn't say Rule 403. It didn't, but by the court. Why shouldn't that matter for purposes of our review? Well, because we look at the totality of the record, and we see that that's a cognizable ground to exclude evidence. The court had a legal basis for it. The court didn't say it, but it is a cognizable and sufficient basis to exclude evidence. Even if we take out the fact that the district court did not say Rule 403, confusion of the jury would still be a valid basis to exclude it, either under the evidentiary rules or even under the confrontation clause. The Ben Arsdale case says that confusion of the jury is a ground to exclude evidence. So that's what we're looking at. We're just saying these fit into rules. This court already has. But he's never contested that finding, never. He does not contest that ruling in his opening brief, and therefore he's waived it. He does not argue for plenary on appeal. He doesn't contest that ruling in his reply brief, and therefore that's a double waiver. You mean contest the rationale of confusion? Is that what you're saying?  He never says that the district court's ruling that admitting that evidence would cause confusion to the jury was an abuse of discretion. To show an abuse of discretion, he would have to at least argue that that manifests a clear error in judgment. He never makes that argument. So you're saying, well, he's made it here, right? So you're saying before he made it today, he's never made it. Well, he didn't make it in his opening brief. We know that. Now, in his reply brief, he doesn't make one sentence on page 9. Those are his numbers, first line. And this is all he says. Juries are smarter than the court and the government apparently believe. That's the only thing he says about the court's ruling about confusion. And that is not a claim that the district court manifested a clear error in judgment. That is not even an argument that there was an abuse of discretion. That's just an opinion that's put out there. There's nothing behind that. So that is waived, and that forecloses any ruling by this court on issue 2. I mean on issue 3. He does at least argue, at least, I don't think he argued it below, but I think he argued in his brief that this is admissible under Rule 613, which you would have as the predicate to applying 403. Does that get you there? Right. That's correct, and I was going to go there next. That's the second way he's waived this claim. He makes his arguments that it was admissible under Rule 613B and the Confrontation Clause for the first time on appeal. He never mentioned those rules below, ever. He didn't mention any rules. It seems that the government is conceding admissibility on appeal. Is that correct? We acknowledge that it would be theoretically admissible if it could pass the evidentiary balancing test under Rule 403, but the district court found that it didn't pass that test, so the district court correctly found that it was not admissible. So if we're writing this opinion, how would you have us address the admissibility issue? Well, as we say in our brief, we think it was theoretically admissible because it would be confusing to the jury it didn't pass the 403 balancing test and it was properly excluded on the basis that allowing it would confuse the jury. That's what we would say. And going back to Judge Moritz's question, as we pointed out, the defendant raises the Rule 613B claims, Confrontation Clause claims for the first time on appeal, and he does not argue plain error on appeal, either in his opening brief or in his reply brief. The words plain error do not appear in his reply brief, so that's clearly waived under either of those theories. He doesn't have a right to be reviewed by this court. So the briefing issue is an effective waiver argument for that, and you're saying in terms of challenging the rationale of confusion, he never did that at all, right? Correct. He never argued that it was an abuse of discretion, meaning evidence to clear error in judgment by the district court. And so to the point about whether what would be the question of admissibility or not, we wouldn't really, under your theory, need to reach that at all. In other words, we wouldn't have to say anything about that, right? That's correct. Okay. That's correct. Did you make an argument about prejudice if we were to reach this issue? It seems that this was pretty significant testimony because Officer Landry apparently testified to the grand jury that she confessed, that Hite confessed to Zerazua contacting her to use her garage to receive vehicles, unload narcotics, let them go, and that in exchange she received payment. That's kind of the whole deal here. Well, you know, we do make that argument. So can you even make an argument that that would be harmless? And it turns out he wasn't stating that based on personal knowledge. He was using reports or investigative reports that he hadn't even, or a video he hadn't even seen of her speaking with investigators. He was just summarizing. Right, right. Well, Your Honor, we think the court might be jumping to a conclusion about the contents of the video, which my colleague did not put into the record. Right. The video is not in the record. It was not admitted at the trial. What the court just summarized as being what she said on the video comes exclusively from my colleague. It doesn't come from anything that is tethered to any piece of evidence in this record. So we can't really say what she did or did not testify to or talk about in the video for purposes of arguing the factual predicate and the legal predicate and the logical predicate that Detective Landry gave false testimony. We just can't go there because we don't have a factual predicate to support that premise. That being said, I did review the video yesterday. It's not in the record. I made notes. I could tell the court about my notes if the court wants, but I would just be talking about extra-record evidence, which I know is very disfavored by this court. But suffice to say, we do not agree with the defendant's characterization of Ms. Hite's statements in that video. I'm sort of confused about the argument to begin with. I mean it was an argument made in the context of grand jury testimony where the rules of evidence don't apply, and he was summarizing statements that other people made, which was understood. I mean I'm just sort of befuddled as to why that even matters. I mean why would that be admissible? Well, I think my colleague would say that even though it relates to a collateral matter, it bears on impeachment for Detective Landry on the basis that he says. Well, what he would be saying is what he summarized from what other people said, not what he said. Right, which is why we argue in our brief that it wasn't relevant because he wasn't testifying to facts within his personal knowledge and therefore didn't bear on any evidence of his credibility or his ability to tell the truth or anything like that. It was basically irrelevant for impeachment of Detective Landry because he was testifying to what other people had said. And was that – I got the impression that the argument was that it wasn't clear to the grand jury, that he simply made the statement that she confessed as though he had personal knowledge when it turns out, and he testified at trial that he didn't have personal knowledge and that he was summarizing. I missed the first half of the question. My understanding is he's suggesting that this – that Officer Landry was testifying without personal knowledge, but he may have led the grand jury to believe that he had personal knowledge based on how he stated the confession. Does that – if that makes sense? That's what I understood, but I may have misunderstood what the argument was. We didn't understand the argument that way. It wasn't articulated that way below, and we never drew that connection. All right. I may be misunderstanding it. And we think the proper made it clear that he was not testifying from facts within his personal knowledge, but he was testifying based on facts applied by other persons. But we don't have the video to – We don't have the video on the record. Let me talk about the continuance issue for a second. Why, in fact, would prejudice come in – well, two questions, but let me ask the prejudice question. Why, in fact, would prejudice come into play if it was over the weekend? I mean it strikes me that the jury would not have been working over the weekend, so what is the prejudice there? Okay. Your Honor, the briefing is a little more clear on both sides about the timeframe of the continuance. The actual timeframe is all of Friday after 10 a.m. So it's all of Friday after 10 a.m. My colleague rested at 10 a.m. on Friday, February 9th, and then the court – We'll bring you back at 11 a.m. I'll see you in about an hour. And this is Record Volume 4, pages 739 to 740, which shows that the case actually ended at 10 a.m. And then at Record Volume 4, page 754, the district court made a statement, anything else we need before we go off the record, waiting for 11 a.m. And then the court said, all right, we'll see you in a few minutes. The government started closing arguments at 11. And then the court's minutes reflect that the jury began deliberations at 2.30 p.m. on Friday. So it's not just a continuance for the weekend. It's continuance for all of Friday after 10 a.m. plus the weekend, to be clear. Okay. Well, that's helpful. All right. So we think that, you know, we'll get under the McLaughlin factors. We'll give him the diligence factor of disobeying the witness. But the court also made a finding that he does not contest, that there's little likelihood that she would have been found. Let me – Oh, sorry. Go ahead, Chief. You say – are you giving them or conceding on the diligence factor? I think we have to. He subpoenaed her. The marshals were looking for her. And I think the court's – the cases say that if you subpoena a witness, then that shows at least enough diligence. Okay. But the other factors don't go in his favor. Convenience, we think the district court did not abuse its discretion, meaning the district court did not make a clear error in judgment in stating that the jury would have been inconvenienced for all of Friday after 10 a.m. What about materiality? Why can't the Rule 17 motion, the content of that motion, essentially serve as a proxy for whatever offer he would contend is missing for rebalancing? Well, you know, we would – that's sort of an odd argument. We would just fall back on a single case, which this court cited in the West case, which the defendant cites in her brief that says that the defendant has to show that the witness would have offered substantial favorable testimony. And looking at this record, there's no basis to conclude that she would have offered substantial favorable testimony. And just because the testimony was material, which is what he's relying on, that doesn't mean it's substantial favorable testimony. If you look at this record, there was not a proffer. We have no way of knowing what she would have testified to as to any element. We know that she would have tried to say that Zarazua is a liar or something like that. But even so, how does that – how is that substantial testimony when you look at the fact that Zarazua's testimony was corroborated by two other witnesses? All three co-conspirators testified. We have a video at her house while the dope is being delivered. We have drugs found on her person after the delivery. So that goes to harm ultimately. But in responding to my question, is it correct to understand the government's position that the reason why we can't look or shouldn't look to the Rule 17 content is because the legal standards are different? Is that a correct understanding of your position? Yes. One is materiality and one is substantial favorable testimony. And materiality doesn't get you substantial favorable testimony. That's basically our argument. So then going on to – which gets to the last factor, the unlikelihood. As I was stating, the district court made a finding that the defendant has never contested ever that it would have been unlikely that these witnesses could have been found, including Ms. Alliston. He's never contested that. That has to go to the government because under the abusive expression standard, he has the burden, he doesn't talk about it, and therefore that goes to the government. So of the four McLaughlin factors, he gets diligence, but we get unlikelihood, we get no prejudice, and we get inconvenience to the parties. Well, with respect to the subpoenaed witness, who is all we're talking about here now, Alliston, what was the basis for saying that essentially she wouldn't be found? The marshals would have had to look for her. Well, I think the basis was that this has been going on a long time, that subpoena has been out there for a while, and they still haven't found her, and what reason did the defendant give that they could be found? If the court looks at the interaction between the defendant and the court – Well, she didn't show up that Friday, right? She didn't show up. She got the subpoena. She didn't show up. Now we have the enforcement. Right, right. We don't really know what would have happened. Well, I think the court was thinking along the lines of – and I'm speculating here, obviously – the court was thinking along the lines of he subpoenaed a witness, there's a warrant out for her, the marshals have probably been looking for her, couldn't find her, why would they be able to find her? Well, there's no testimony about the marshals looking for her. There's nothing about that, is there? No, as I said, I was speculating about the court's thought process. Well, I'm wondering what the court meant by that. But still, we don't have any challenge to that finding on this record at all. And he has the burden on abuse of discretion to show a clear error of judgment. He doesn't show that that's a clear error of judgment. So that factor has to go to us. I see that I've exceeded my time. I'd like to thank the court for the extra time and I obviously yield the remainder of the time that I don't have. Thank you. Thank you, Mr. Brown. In response, you can have one minute of rebuttal if you want it. Thank you. I'll try and be concise and brief, Your Honor. The issue comes up about whether the, quote, confession should have been shown part of the record. What's interesting about that is that trial, the government, its own exhibit, declined its admission and objected that it was not admissible. Why? Because it was hearsay. And because it was hearsay and the defendant or the witness was not available, it wasn't admissible. Well, at that point, the defense was flummoxed. On one hand, the government was claiming our witness didn't perjure himself when he said that Ms. Hite confessed in this video. But on the other hand, you can't be admissible because there was no confession. So there's no exception to the hearsay rule because there was no admission. Secondly, the witness, Your Honor, I still struggle about how the court could just simply make a statement. This case has been going on long enough. It wasn't the defendant's fault. It had been going on long enough. And therefore, you can't try and find this witness. We might not have found her, but all I can tell the court is we found her before we got a subpoena served on her. We interviewed her and her family. I don't think she would have been an easy find. She would have been there when the trial started. She would have put it on her subpoena. We didn't have a choice. All right. Thank you. Thank you, counsel, for your fine arguments. Case is submitted.